**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ISELA V. MARQUEZ and FERNANDO MARQUEZ, as plenary co-guardians of CHLOE MARQUEZ; JANE DOE and JOHN DOE, legal guardians of JANE DOE 2, a minor, | ) ) ) ) ) | Case No. 20-cv-4267 |
| | ) | Judge Robert M. Dow, Jr. |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| BHC STREAMWOOD HOSPITAL, INC. d/b/a Streamwood Behavioral Healthcare System, a Tennessee corporation, | ) ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs bring this action against Defendant BHC Streamwood Hospital, Inc. for alleged violations of Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and Section 1557 of the Patient Protection and Affordable Care Act ("ACA"). Current before the Court is Defendant's motion to dismiss Plaintiffs' complaint for lack of standing and failure to state a claim [19]. For the reasons stated below, Defendant's motion [19] is granted in part (as to Counts 1 and 4) and denied in part (as to Counts 2, 3, 5, and 6). Plaintiffs are given leave to replead Counts 1 and 4 by October 14, 2021 if they believe that they can do so consistent with this opinion and Federal Rule of Civil Procedure 11. The parties are directed to proceed with initial disclosures and written discovery if they have not already done so, but should not schedule any depositions until after the Court resolves the issues relating to coordinating discovery discussed at the September 16, 2021 status hearing [see 27].

## I.  Background

### A.  Factual Background

Defendant Streamwood Hospital is a Tennessee corporation that has provided mental health services in Illinois since 1991. [16 at ¶ 6.]  Streamwood was the first free-standing child, adolescent, and young adult behavioral healthcare facility in Illinois, and its primary focus remains on providing emotional and behavioral healthcare services to teens and young adults. [*Id.* at ¶¶ 1, 6.]  Plaintiffs are two individuals who allege that they were denied treatment at Streamwood because of their physical disabilities. Plaintiffs allege the following facts.[1]

#### 1.  Plaintiff Chloe Marquez

Plaintiff Chloe Marquez is a 21-year-old woman who lives in Orland Park, Illinois. [*Id.* at ¶ 4.]  She suffers from athetoid/spastic cerebral palsy with dysphasia and dysphagia [*id.*] which limit her mobility in a number of ways. [*Id.* at ¶ 9.]  Because of her cerebral palsy, Chloe requires a power wheelchair in most instances, though she can ambulate short distances of up to 100 feet with a walker. [*Id.*]  Because of her dysphasia, she communicates with others by using the text-to-speech function of an iPad. [*Id.*]  She follows a puree diet and consumes supplemental nutrition through a gastronomy tube due to her dysphagia. [*Id.*]

On June 22, 2019, Chloe's mother, Isela, noticed a linear abrasion on Chloe's neck. [*Id.* at ¶ 10.]  When Isela asked Chloe about the abrasion, Chloe admitted that she had attempted suicide. [*Id.*]  Isela contacted Chloe's psychiatrist seeking guidance, but she was unable to reach the doctor until the following day, June 23, 2019, when the psychiatrist instructed Isela to take Chloe to the emergency room at Northwestern Memorial Hospital. [*Id.* at ¶¶ 10–11.]  Chloe was evaluated by

---

[1] For purposes of Defendant's motion to dismiss, the Court accepts as true all well-pled allegations set forth in the complaint [16] and draws all reasonable inference in Plaintiffs' favor. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

Northwestern's psychiatric acute crisis intervention team who learned that Chloe had been having suicidal ideations since June 10, 2019. [*Id.* at ¶ 11.] The crisis intervention team recommended that Chloe be admitted for inpatient psychiatric care. [*Id.* at ¶ 12.] Members of Northwestern's crisis intervention team then began searching for a mental and behavioral hospital where Chloe could receive inpatient psychiatric care.[2] [*Id.*]

On June 26, 2019, a social worker with Northwestern's crisis intervention team contacted Streamwood seeking inpatient placement for Chloe. [*Id.* at ¶ 13.] A Streamwood employee told the social worker that Streamwood would not accept Chloe because of her cerebral palsy and her need for a wheelchair and gastronomy tube. [*Id.*]

### 2.    Plaintiff Jane Doe 2

Plaintiff Jane Doe 2, a minor, lives with her parents in Northbrook, Illinois. [*Id.* at ¶ 5.] She suffers from cerebral palsy and has a history of anxiety and depression. [*Id.* at ¶¶ 5, 16.] Jane Doe 2 also requires a wheelchair because of her cerebral palsy. [*Id.* at ¶ 17.]

Jane Doe 2 was attending a summer camp for children with disabilities in Grand Rapids, Michigan in July 2019 when she began having episodes of significant anxiety, confusion and delusion, and expressing suicidal thoughts. [*Id.* at ¶ 18.] She was rushed by ambulance to a hospital in Grand Rapids where she remained as an inpatient for five nights. [*Id.*] Hospital employees searched for a mental and behavioral health hospital in the Grand Rapids area where Jane Doe 2 could receive treatment, but they were unsuccessful. [*Id.*] An outpatient psychiatrist at the hospital discharged Jane Doe 2 to her mother on July 30, 2019 and recommended that Jane Doe 2 go to the emergency department of Highland Park Hospital to expedite the search for inpatient psychiatric care at a local facility in Illinois. [*Id.*] Highland Park Hospital's crisis intervention team diagnosed

---

[2] The complaint does not mention why Chloe could not be admitted at Northwestern.

Jane Doe 2 as having depression with psychosis and concluded that she required immediate hospitalization. [*Id.* at ¶ 19.] The hospital could not admit Jane Doe 2 to its own mental and behavioral health unit, however, so it searched for another inpatient facility on Jane Doe 2's behalf. [*Id.* at ¶ 20.]

On July 31, 2019, a member of Highland Park Hospital's crisis intervention team contacted Streamwood seeking treatment for Jane Doe 2. [*Id.*] The crisis intervention team member faxed a referral packet to Streamwood and followed up with the hospital a few hours later. [*Id.*] A Streamwood employee initially denied receiving the referral packet, but after having it faxed to Streamwood for a second time, informed the Highland Park Hospital employee that it could not accommodate Jane Doe 2 because of her physical needs. [*Id.*]

### B. Procedural Background

Plaintiffs initiated this action on July 22, 2020 alleging that Defendant violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 *et seq* (Counts 1 and 4), the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq* (Counts 2 and 5), and the Patient Protection and Affordable Care Act (ACA), 42 U.S.C. § 18116(a) (Counts 3 and 6). [3, 16.] Plaintiffs seek declaratory and injunctive relief on all counts to enjoin further violations of these acts, while Marquez seeks compensatory damages on Counts 2 and 3, and Jane Doe 2 on Counts 4 and 5. Defendant moves to dismiss all counts on grounds that Plaintiffs lack standing to pursue their claims and have failed to state a claim for relief. [19.]

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) "provides for dismissal of a claim based on lack of subject matter jurisdiction, including lack of standing." *Stubenfield v. Chicago Housing Authority*, 6 F.Supp.3d 779, 782 (N.D. Ill. 2013) (citing *Retired Chicago Police Ass'n v. City of*

*Chicago*, 76 F.3d 856 (7th Cir. 1996)).  Typically, "[i]n ruling on a motion to dismiss for want of standing, the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Retired Chicago Police Ass'n*, 76 F.3d at 862); see also *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1057 (7th Cir. 2018); *Browner v. American Eagle Bank*, 355 F.Supp.3d 731, 732–33 (N.D. Ill. 2019).  However, when "standing is challenged as a factual matter, the plaintiff must come forward with 'competent proof'—that is a showing by a preponderance of the evidence—that standing exists." *Lee*, 330 F.3d at 468; see also *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 445 (7th Cir. 2009) (once evidence calling the plaintiff's standing into question is proffered, the presumption of correctness accorded to a complaint's allegations falls away, and the plaintiff bears the burden of coming forward with competent proof that standing exists).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original).  Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Additionally, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

## III. Analysis

Defendant asserts two grounds for dismissal: first, that Plaintiffs lack standing to bring their claims, and second, that even if Plaintiffs have established standing, their complaint nonetheless fails to state a claim.

### A. Standing

"To establish Article III standing, plaintiffs must show they have suffered '(1) a concrete and particularized injury in fact (2) that is fairly traceable to the challenged action of the defendant, and that is (3) likely to be redressed by a favorable judicial decision." *Gaylor v. Mnuchin*, 919 F.3d

420, 425 (7th Cir. 2019) (quoting *Freedom from Religion Foundation, Inc. v. Lew*, 773 F.3d 815, 819 (7th Cir. 2014)). The first element is at issue here.

### 1. Injunctive Relief

Defendant argues that Plaintiffs lack standing to pursue injunctive relief under the ADA, Rehabilitation Act, and the ACA. [20 at 9.] To obtain prospective injunctive relief under the ADA, "a plaintiff must allege 'past injury under the ADA'; show that 'it is reasonable to infer from her complaint that this discriminatory treatment will continue'; and show that 'it is also reasonable to infer, based on the past frequency of her visits and the proximity of the public accommodation to her home, that she intends to return to the public accommodation in the future.'" *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (quoting *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008)). Defendant argues that even if Plaintiffs have plausibly alleged a past injury, they have not alleged any facts which tend to show that they will face discriminatory treatment by Streamwood again in the future. The Court agrees.

The Seventh Circuit's opinion in *Scherr* is instructive. That case involved an elderly plaintiff who required the use of a walker and was injured while exiting the bathroom of her hotel room at the Courtyard Marriott Hotel in Overland Park. Plaintiff brought an action under Title III of the ADA alleging that the hotel's use of the spring-hinged door closers which caused her injury violated the ADA. Scherr sought injunctive relief from not only the hotel in which she sustained her injury, but also 56 other Courtyard Marriott Hotels in other locations which used the same spring-hinged door closers that caused her injury. In affirming the district court's judgment on the pleadings in favor of the Defendants, the Seventh Circuit ruled that Scherr had standing to seek injunctive relief from the Overland Park hotel, but lacked standing to sue the other 56 hotels she named as defendants.

Scherr had standing to sue the Overland Park Courtyard Marriott because her complaint established a concrete intent to return to the hotel. Scherr stated in her complaint that "she would use the Overland Park Courtyard Marriott but for the alleged continuing ADA violations," she was "aware that the hotel continue[d] to use the spring-hinged door closers," and "much of her extended family lives in the area and the Overland Park Courtyard Marriott is close to them." *Id.* These allegations, the Court determined, established her specific plans to return to the hotel. In fact, Scherr's stated plans to attend her cousin's then-upcoming wedding in the Overland Park area were "sufficient to support a plausible inference that Scherr would have liked to return to the hotel but for its continued use of the spring hinges." *Id.*

Here, by contrast, each Plaintiff in this case makes only one statement with respect to her future plans: "Upon the Hospital's compliance with its federal nondiscrimination mandates, she intends to return to Streamwood Hospital." [16 at ¶¶ 8, 16.] Assuming for analysis that Streamwood's facilities are indeed non-ADA-compliant, Plaintiffs must still "allege a 'real and immediate' threat of future violations of their rights" to obtain the prospective injunctive relief they seek, *Scherr*, 703 F.3d at 1074 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)), and they have failed to do so.

Notably missing from Plaintiffs' complaint are any facts suggesting that they had ever before sought care at Streamwood or will again in the future. See *Jeuch v. Children's Hospital and Health System, Inc.*, 353 F. Supp. 3d 772, 786 (E.D. Wis. 2018) ("The fact that [plaintiff] *could* return to Children's Hospital is insufficient."). While Plaintiffs have histories of anxiety and depression which have "and will likely from time to time require intervention or treatment on an inpatient or outpatient basis," [16 at ¶¶ 8, 16], their need for ongoing psychiatric care does not establish that they will need to return to Streamwood. See *Ayling v. Memorial Health System*,

2019 WL 2234061, at \*3 (C.D. Ill. May 23, 2019) (noting that the allegations showed that plaintiff will need "continued care" after bypass surgery, but did "not establish that he will need hospitalization or that he will return" to the defendant hospital); see also *McCullum v. Orlando Regional Healthcare System, Inc.*, 768 F.3d 1135, 1146 (11th Cir. 2014) (finding that despite having required two extended stays at the defendant's hospitals in the past, plaintiff "failed to establish a real and immediate threat that he will be readmitted" at either hospital).

Rather than demonstrating a concrete intent to return to Streamwood, Plaintiffs' vague plans in this case resemble those made by the plaintiff in *Scherr* against the other 56 hotels relative to which she lacked standing. See *Scherr*, 703 F.3d at 1075 ("[A]t no point does [the plaintiff] claim that she would visit a particular Courtyard Marriott but for the alleged ADA violations, and she does not show an intent even to return to any geographic area where another Courtyard Marriott is located."). Plaintiffs therefore have not alleged an injury in fact that would entitle them to prospective injunctive relief. However, given the possibility that with more robust allegations, Plaintiffs may be able to clear this hurdle, they are given leave to replead Counts 1 and 4 by October 14, 2021 if they believe that they can do so consistent with this opinion and Federal Rule of Civil Procedure 11.

## 2. Damages

Although Plaintiffs lack standing to pursue injunctive relief, they may still be able to seek damages. See *Straw v. Vill. of Streamwood, Ill.*, 734 F. App'x 344, 348 (7th Cir. 2018) ("A plaintiff must demonstrate standing separately for each type of relief he seeks."). Defendant suggests that Plaintiffs lack standing to assert even a claim for damages, however, because "Plaintiffs' *sole* reliance on unverified third party testimony (taken for the truth) cannot lead to a reasonable inference that Streamwood is noncompliant with discrimination laws such that there is

an injury or controversy here." [22 at 2.] In other words, Defendant argues that Plaintiffs have failed to allege past injury. In Defendant's view, "the word of an unidentified third party medical provider employee that Streamwood would not admit [Plaintiffs] because of their wheelchairs," is not enough to establish injury in fact. Plaintiffs counter that their injuries are "current deterrence" [21 at 8], which can establish an injury in fact. See *Access Living of Metro. Chicago v. Uber Technologies, Inc.*, 351 F. Supp. 3d 1141, 1150 (N.D. Ill. 2018), aff'd 958 F.3d 604 (7th Cir. 2020).

Plaintiffs have alleged enough to support an inference that they suffered a past injury allowing them to sue for damages. Through Plaintiffs' healthcare providers and upon their medical advice, they sought immediate admission to Streamwood for inpatient crisis intervention treatment. But according to the complaint, hospital employees working on behalf of Plaintiffs were told that Streamwood would not accept either Plaintiff "because of" their physical disabilities. Despite Defendant's contention otherwise, it does not affect the Court's standing analysis at this stage that the discrimination Plaintiffs allegedly suffered was conveyed to them by third parties, as "most courts have found that hearsay is properly considered" in determining whether Plaintiffs have established federal court jurisdiction. *Tekway Inc. v. AT&T Services, Inc.*, 2021 WL 916080, at *3 (N.D. Ill. Mar. 10, 2021). In addition, Plaintiffs allege that according to at least one internet source, Defendant does not report itself as being wheelchair accessible. [16 ¶ 15.] When construing the facts in the light most favorable to the Plaintiffs, as the Court must at this stage, the complaint alleges sufficient injury to support claims for damages. The Court thus considers whether Plaintiffs have stated claims for monetary relief under the Rehabilitation Act and ACA.

### B.      Failure to State a Claim

"Compensatory damages are available under the Rehabilitation Act, but may be available only for claims of intentional discrimination." *Reed v. Columbia St. Mary's Hospital.*, 782 F.3d 331, 337 (7th Cir. 2015) (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)). The Court therefore considers next whether Plaintiffs have stated a claim for monetary relief under the Rehabilitation Act (Counts 2 and 5) or the Affordable Care Act (Counts 3 and 6).  According to the Defendant, Plaintiffs have failed to state a claim under either the Rehabilitation Act or the ACA because they have not plausibly alleged that they were denied treatment at Defendant's facility because of their disabilities.

The Rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794.  Section 1557 of the ACA, 42 U.S.C. § 18116, also prohibits disability discrimination on the grounds protected under the Rehabilitation Act, and differs only in its specific application to the healthcare context.

"For disability-discrimination claims, the ACA incorporates the substantive analytical framework of the RA." *Francois v. Our Lady of the Lake Hospital, Inc.*, 8 F.4th 370, 378 (5th Cir. 2021) (citing *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 239 (6th Cir. 2019)).  The Court thus analyzes claims under these two acts together.  See *id.*  To state a claim under either provision, Plaintiffs must establish: (1) they are handicapped individuals as defined by 29 U.S.C. § 705(20); (2) they are "otherwise qualified" for participation in the program; (3) the program receives federal financial assistance; and (4) plaintiffs have been denied the benefits of the program

11

solely because of their handicaps. *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 484 (7th Cir. 2019). Defendant challenges only the fourth factor here.

Plaintiffs may satisfy the fourth element—the causation factor—by demonstrating either: "(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999). In essence, Plaintiffs must demonstrate that "but for the disability, the disabled person would not have been excluded from the program." *Id.*

Plaintiffs have alleged that Streamwood would not accommodate Plaintiffs "because of," in Chloe's case, "her cerebral palsy, her use of a wheelchair, and use of a G-tube" [16 at ¶ 13], and in Jane Doe 2's case, "her physical needs" [*id.* at ¶ 20]. At the pleading stage, these allegations "permit an inference of intentional discrimination sufficient to support a claim for compensatory damages" and therefore are sufficient to withstand dismissal. See *Reed*, 782 F.3d at 337.

## IV.    Conclusion

For these reasons, Defendant's motion to dismiss [19] is granted in part and denied in part. Counts 1 and 4 are dismissed pursuant to Defendant's 12(b)(1) motion for lack of standing as they seek only injunctive relief, for which Plaintiffs' lack standing to sue. The motion is denied with respect to the remaining counts (Counts 2, 3, 5, and 6) to the extent that they seek monetary compensation. Plaintiffs are given leave to replead Counts 1 and 4 by October 14, 2021 if they believe that they can do so consistent with this opinion and Federal Rule of Civil Procedure 11. The parties are directed to proceed with initial disclosures and written discovery if they have not already done so, but should not schedule any depositions until after the Court resolves the issues relating to coordinating discovery discussed at the September 16, 2021 status hearing [see 27].

Dated: September 21, 2021

_____
Robert M. Dow, Jr.
United States District Judge